UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE LOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23 CV 353 JMB |
| | ) | |
| DAVID VANDERGRIFF, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Steve Lott's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Petition is **DENIED**.

**I.    Procedural Background**

Petitioner is held by the Missouri Department of Corrections pursuant to the judgment and sentence of the Cape Girardeau County Circuit Court. In August, 2016, after a bench trial, he was convicted of murder in the second degree, armed criminal action, and unlawful possession of a firearm and sentenced 30 years', 10 years', and 15 years' imprisonment, respectively, to be served consecutively (Doc. 14-9, pp. 4-5). On December 19, 2017, the Missouri Court of Appeals affirmed his conviction and sentence (Doc. 14-9). Petitioner's motion for postconviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied by the trial court and that decision was affirmed on appeal to the Missouri Court of Appeals on May 24, 2022 (Doc. 14-17).

Petitioner filed his *pro se* § 2254 petition in this Court on March 30, 2023 (Doc. 1). Petitioner retained counsel who filed an amended petition (Doc. 11), to which Respondent responded (Doc. 14), and Petitioner replied (Doc. 19).

Petitioner asserts four grounds for relief: (1) that his due process rights were violated when a witness, Corporal Steve Jarrell, was permitted to testify as an undisclosed expert; and (2) that he received ineffective assistance of counsel for: (a) trial counsel's failure to adduce favorable testimony from an expert, Dr. Russell Deidiker; (b) trial counsel's failure to introduce evidence, a letter, that would undermine the state's case; and, (c) appellate counsel's failure to argue that he was denied a speedy trial (Doc. 11, pp. 2-3).

## II.   **Factual Background**

In light of the grounds for relief raised by Petitioner, it is unnecessary to recount in full detail the factual history of this matter.  In sum, Petitioner was convicted of killing his wife in the early morning hours of September 12, 2013.  Petitioner argued at trial that his wife was shot while he tried to wrestle a gun from her while she was suicidal.  However, the state presented evidence showing that the victim was shot in the back of her head at close range while sitting on a bed. Additional facts will be set forth below as necessary.

## III.   **Legal Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), allows for habeas relief in Federal court only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005).  "The state court need

not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Brown, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Id.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed

to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions.") (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id.

Page **4** of **16**

> Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831–32; see also Springs v. Payne, 95 F.4th 596, 601-602 (8th Cir. 2024). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

## IV. Discussion

### A. Due Process

Petitioner first asserts that his due process rights were violated when the trial court permitted Corporal Jarrell to give opinion testimony based on his observations of the blood splatter at the crime scene.[1] In particular, Corporal Jarrell testified that the blood splatter was inconsistent with a victim who was standing, which was contrary to Petitioner's version of events. Petitioner broadly raised this claim on direct appeal, citing to state law (Doc. 14-6). In considering the claim, the Missouri Court of Appeals found that Corporal Jarrell did not testify as an expert; rather, he

---

[1] While not argued by Respondent, the Court would find this claim was procedurally defaulted because Petitioner's broad claim of a due process violation before the state court is insufficient to preserve a constitutional challenge before this Court. See Gray v. Netherland, 518 U.S. 152, 163 (1996) ("We have also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."). In his brief before the state court (Doc. 14-6), Petitioner refers to the Sixth and Fourteenth Amendments to the United States Constitution. However, his argument relied wholly on state evidentiary law without a single reference to either a Supreme Court case or any federal case, statute, or other authority. Unsurprisingly, the state court analyzed his claim based on state law.

Page 5 of 16

testified based on his personal observations and experience as a police officer, which he is permitted to do pursuant to state law (Doc. 14-9, p. 12, citing State v. Woodson, 140 S.W.3d 621 (Mo. Ct. App. 2004) and State v. Battle, 415 S.W.3d 783 (Mo. Ct. App. 2013)).  The court necessarily concluded that admission of the evidence did not deprive Petitioner of a fair trial.

While Petitioner raised this claim on direct appeal, it does not entitle him to federal habeas relief.  First, this Court cannot re-evaluate the state court's interpretation of state law.  Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) ("Federal courts are limited to deciding whether a state conviction violated the federal Constitution or laws" and this court "may not re-examine a states court's interpretation and application of state law.").  The state court found that Corporal Jarrell's testimony was not expert testimony and that the trial court did not err in admitting it over Petitioner's objection that it was undisclosed expert witness testimony.  Therefore, Petitioner's argument before this Court, that he was deprived the opportunity to provide rebuttal expert testimony, is merely an argument that the state court erred in applying state law.

Second, and more importantly, in order for Petitioner to prevail on this due process claim, he must show that the admitted evidence resulted in a fundamentally unfair trial – that the admission was "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infect[ed] the trial." McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir 1991).  Petitioner must show that a specific constitutional right was violated by the admission of the evidence or that the admission of the same "rendered his entire trial fundamentally unfair." Sittner v. Bowersox, 969 F.3d 846, 849-850 (8th Cir. 2020) (quotation marks and citation omitted).  Petitioner makes no such showing.

Instead, Petitioner broadly argues that the circumstances of Corporal Jarrell's testimony prevented him from presenting a "complete defense" and denied him a "fair opportunity to defend against the allegations of the state" (Doc. 19, p. 16).  Such broad arguments are insufficient.

Page **6** of **16**

Petitioner cites no case authority that would provide for the due process relief he requests, nor does he offer any argument that his *entire* criminal trial was fundamentally unfair. Petitioner has made no showing that "there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict probably would have been different." Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987). Petitioner asserts that the blood splatter evidence directly contradicted his assertion that the victim was shot by accident while standing and struggling to commit suicide – implying that it was the only evidence supporting the conviction. As set forth by the state court, however, the evidence revealed that Petitioner and the victim argued before the shooting (and for some time prior to the shooting); the victim was shot by a gun that was two inches from the back of her head in a level trajectory; the coroner determined that the shooting was a homicide; Petitioner fled from the scene; and, Petitioner could not initially explain how the victim was shot. In the context of this evidence this Court cannot conclude that he was deprived a fair trial by the admission of Officer Jarrell's testimony. There is simply no showing that the state court's conclusion that Officer Jarrell did not provide expert testimony and the admission of the same is either contrary to or an unreasonable application of federal law or an unreasonable determination in light of the facts. As such, the decision is entitled to deference. 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 379 (2000).

  **B.**  **Ineffective Assistance of Counsel**

Petitioner next argues that he received ineffective assistance of counsel for: (a) trial counsel's failure to adduce favorable testimony from an expert, Dr. Russell Deidiker; (b) trial counsel's failure to introduce evidence, a letter, that would undermine the state's case; and, (c) appellate counsel's failure to argue that he was denied a speedy trial (Doc. 11, pp. 2-3). Petitioner has not explained or discussed how the Missouri Court of Appeals either unreasonably applied the law or unreasonably determined the facts in light of the evidence. As such, Petitioner cannot

satisfy the "doubly deferential" standard required to obtain habeas relief on the grounds raised in his petition. To the contrary, the state courts correctly identified the controlling legal standard for Petitioner's ineffective assistance of counsel claims. Burt v. Titlow, 571 U.S. 12, 22-23 (2013) (noting that the burden is on a petitioner to show that counsel's performance was deficient).

Dr. Deidiker testified at trial as the forensic pathologist who performed the autopsy on the victim (Doc. 14-1, pp. 334-335). Based on his examination, he determined that: the cause of death was a gunshot to the head in the manner of a homicide (Id. 350-351); that the bullet entered at the back of the victim's head on a level path (Id. 337, 351); the barrel of the gun was less than two inches from her head (Id. 345); and, that the injury was instantly incapacitating (Id. 345). On cross-examination, Dr. Deidiker testified that other superficial wounds on the victim's head and jaw line could have been caused if she had fallen from a standing position between the bed and wall (Id. 354).

In his post-conviction motion before the state courts, Petitioner argued that trial counsel was ineffective for failing to acquire testimony from Dr. Deidiker that the victim would have been standing when she was shot; thereby supporting Petitioner's theory of the case.

At an evidentiary hearing on Petitioner's post-conviction motion (Doc. 14-12), Dr. Deidiker testified that photographs of the crime scene could show blood transfer stains on the walls that are possibly consistent with a standing victim (Id. 12). Upon questioning by the trial judge, Dr. Deidiker testified that the space between the wall (where some of the blood stains were found) and the bed was about or less than 18 inches (Id. 14). He further indicated that none of the blood stains were more than waist high (Id.). There also was "a lot of blood on the bed" suggesting that the victim was laying on the bed while bleeding (Id.). However, the victim could have been positioned on the bed after being shot (Id. 17).

In considering this claim, the Missouri Court of Appeals (Doc. 14-18), recounted the evidence: that Corporal Jarrell testified the amount of blood on the bed "suggested that it was the primary area that bloodletting occurred" and that if the victim was standing there would have been blood on the wall higher than 44 inches; that another witness, Sergeant Scott Rawson agreed with Corporal Jarrell's assessment and that the shooting occurred below that 44 inch level; that Dr. Deidiker testified that the cause of death was a close contact and level gunshot to the back of the head that was likely not self-inflicted (Id. 4-5). The Court went on to note Petitioner's testimony, that the victim was suicidal, that she was holding the gun close to her head, that he approached the victim from behind, that they struggled between the bed and the wall and she was shot in the back of the head which caused her to fall on the bed rail (Id. 5). Petitioner also testified inconsistently: he initially stated he tried to lift the victim's body to the bed but could not and then testified that he did place her body on the bed before returning it to the floor (Id.).

In addressing the argument, the Court first found that trial counsel did elicit testimony from Dr. Deidiker that the victim may have been standing while shot. The Court stated that while trial counsel "did not specifically ask whether the victim was standing when she was shot, the desired testimony was effectively yielded" (Id. 6). As noted above, Dr. Deidiker testified that the abrasions on the victim could have been the result of falling from a standing position when the gun was discharged (Id. 6). The state court next found that there was no prejudice to Petitioner because Dr. Deidiker's testimony at the post-conviction hearing was equivocal at best as to whether the victim could have been standing and would not have overcome the testimony of Corporal Jarrell, Sergeant Rawson, and the physical evidence. Thus, the Court found that Petitioner failed to demonstrate a reasonable probability that the additional testimony would have altered the outcome of the trial.

Before this Court, Petitioner does not address how the state court erred in its conclusions or why it is not entitled to deference. Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014). He

offers no argument that would contradict the finding that trial counsel did, in fact, elicit some testimony from Dr. Deidiker that the victim could have been standing at the time of the shooting. Harrington, 562 U.S. 101.  As such, Petitioner has not demonstrated that counsel's performance was deficient.  See Dorsey v. Vandergriff, 30 F.4th 752, 757 (8th Cir. 2022) (stating that a petitioner must demonstrate that counsel's conduct amounted to incompetence).  Moreover, there is no showing that the state court erred in finding no prejudice.  As the state court found, there was significant evidence that the victim was sitting when shot and that it was unlikely that she shot herself in an attempted suicide – evidence that would not be overcome with Dr. Deidiker's potential equivocal testimony.

Petitioner's third ground for relief, which also presents an ineffectiveness claim as to an evidentiary issue at trial, is equally unavailing.  In this claim, Petitioner asserts that trial counsel was ineffective for failing to introduce a letter that he wrote to his former counsel, Ella Conley.  In the September, 2013 letter, he described the events on the night of the shooting.  The description is consistent with his testimony at trial, that the victim was suicidal and was shot while he was attempting to retrieve a gun from her (Doc. 14-12, p. 53, 57-58).  Counsel Conley asked for the letter to begin investigating the case and while the information was "fresh" in Petitioner's mind (Id. 51).[2]  One of Petitioner's trial counsel indicated that the letter would have contradicted the state's attempt to undermine Petitioner's credibility by arguing that his testimony at trial merely conformed to the evidence (Id. 76).  He further indicated that the letter would have been admissible as a prior consistent statement but that it was not introduced (Id.).  However, trial counsel also noted that Petitioner's case was tried to a judge and that the judge would not have given much weight to the prosecutor's argument (Id. 87).

---

[2] However, counsel Conley testified that she would not have introduced the letter at trial (if she had remained on the case), even with Petitioner's consent because it would have been deemed "self-serving hearsay" (Id. 53-54).

Lead counsel in Petitioner's trial, Cynthia Dryden, testified that she could have introduced the letter to show Petitioner's consistent statements but she did not (Doc. 14-13, p. 208). When asked why, she stated:

> There's a couple of reasons. Number one, in a bench trial, I don't think it's necessary. The – I mean, its not a jury and the judge already knows the client has had all of these statements ahead of time and all of these police reports. So, its not some fabrication that he's made, just because he's heard witness testimony.
> And frankly, number two, why I didn't use it is the letter was more damaging than helpful.
>
> * * *
>
> If you look at the front of the letter, we had been able to keep out all of the information about prior fights. All of the information about her calling the police on Mr. Lott before, her going to her family and telling the family about fights, I believe unfairly and not true, that Mr. Lott had attacked her, in the past.
> She had some mental health issues and that came out. But all of the past history of all of the previous fights didn't. And so the history doesn't come out, until that letter. And that letter would have opened the door and I didn't think it was worth it, for that.

(Id. 208-209). Counsel clarified that if there was a jury trial, she may have introduced the letter (Id. 209-210).

In addressing this claim, the Missouri Court of Appeals accurately summarized the above testimony and acknowledged that a prior consistent statement could be used to rehabilitate a witness whose credibility is attacked (Doc. 14-18, pp. 7-8). However, the court went on to find that there was a presumption that trial counsel employed sound trial strategy in declining to introduce the letter (Id. 8). In outlining that strategy, the court noted that counsel did not want to introduce evidence of prior instances of violence between Petitioner and the victim and that the trial court had already reviewed the police report and trial testimony and would not have given weight to the letter or to the prosecution's attempt to discredit Petitioner's testimony based on his knowledge of the evidence (Id. 8-9). Finally, the court found that Petitioner had not overcome the presumption.

Again, Petitioner makes no argument that the Missouri Court of Appeals erred in its assessment.  Counsel's "strategic decisions . . . are entitled to a 'strong presumption' of reasonableness." Dunn v. Reeves, 594 U.S. 731, 739 (2021); Strickland, 466 U.S. at 689.  In order to prevail on this claim, then, Petitioner must show that counsel's conduct fell below a standard of "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688.  Petitioner makes no such showing.  It is reasonable for an attorney to decline to introduce a letter that would cause more harm than good.  In this case, counsel decided that a letter that included undisclosed instances of violence between Petitioner and the victim, that would open-up Petitioner to cross-examination on that violence, outweighed any benefit the letter may have had in bolstering his credibility, especially in a bench trial.  Such a decision appears reasonable; it was also reasonable for the state courts to find as much; and, Petitioner has offered no argument or case authority demonstrating the unreasonableness of this trial strategy.

Finally, Petitioner asserts that appellate counsel was ineffective for failing to raise a speedy trial issue on direct appeal.  Petitioner asserts that three years elapsed between his arrest and trial (a presumptively prejudicial amount of time) and that he filed a motion for or requested a speedy trial in May 2014, June 2014, and immediately prior to trial in August 2016. He claims he was prejudiced by the delay because two witnesses died in the interim: a neighbor (Ruth Mitchell) who would testify that Petitioner told her "that a bad accident had just happened and that he called the police" just after the shooting; and, his father (Leroy Lott) who would testify as to conversations regarding the victim's mental status.  He further asserts that the state used the delay to discredit his testimony by implying that Petitioner used the delay to "craft a story" contrary to the state's theory.  Finally, he argues that appellate counsel was aware of this argument and that the failure to raise the issue was not sound strategy.

In addressing this claim, the state court found that counsel was not ineffective for failing to raise an unmeritorious claim even though she gave no particular reason for failing to raise the claim on appeal (Doc. 14-18, pp. 10-11). In particular, the court found that Petitioner was originally indicted on November 18, 2013, that a motion for a speedy trial was filed on June 5, 2014, and that the case was dismissed on March 25, 2015 after a new indictment was filed the previous day (Id. 11). A new motion to dismiss based on the right to a speedy trial was filed on June 2, 2015 (as to the dismissed case); that motion was denied as moot by the trial court because the case had been dismissed. As to the refiled case, Petitioner did not file any motion for a speedy trial; instead, on the first day of trial, he orally moved for dismissal. The court found that Petitioner had failed to raise a speedy trial issue, supported by argument, in the case that was tried; that there was no evidence that delay attributed to the state resulted in a violation of Petitioner's rights; that there was any actual prejudice to Petitioner; or that such an argument would have been meritorious.[3] The court concluded, then, that counsel was not ineffective for failing to raise an unmeritorious claim because there was no prejudice (Id. 14). Again, Petitioner does not directly address how the state courts erred in considering this claim.

The Sixth Amendment guarantees "the right to a speedy and public trial." The clock begins to run at the time a defendant is arrested or indicted and continues until trial. United States v. Marion, 404 U.S. 307, 325 (1971); United States v. Johnson, 990 F.3d 661, 670 (8th Cir. 2021). In addressing whether a Sixth Amendment right to a speedy trial is violated, courts must weigh four factors: "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." United States v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006). The

---

[3] The trial court found that no motion for a speedy trial was filed in the case that was eventually tried and that appellate counsel was not ineffective to failing to raise the issue (Doc. 14-13, pp. 251-252).

state court correctly identified this standard (Doc. 14-18, p. 11, citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). The state court found that even if the length of delay was excessive, there was no evidence that the length of delay was other than at the Petitioner's request, that the Petitioner did not assert his right in a meaningful manner, and that, in any event, there was no prejudice. In its analysis, the state court followed the analysis of Barker.

Like the Missouri courts assumed, even if the length of delay is prejudicial,[4] Petitioner has made no showing that the reason for delay is attributable to the state. Petitioner states in his brief that: "Aside from petitioner's counsel moving to withdrawal [sic] on June 17, 2015, none of the delays in the case can be attributed to petitioner" (Doc. 11, p. 27). However, Petitioner cites to no part of the record that would support this contention. As pointed out by the state court, his attorney Hoskins testified that a year and a half delay was attributable to conversion of this criminal case to a death penalty case – that caused the defense to "start over with the representation" (Doc. 14-12, p. 78, 83-84). At least this delay, certainly and understandably, is attributable to the defense. Moreover, there is no argument that the state intentionally delayed the case. United States v. Summage, 575 F.3d 864, 876 (8th Cir. 2009).

Petitioner likewise does not address the state court's finding that he did not meaningfully assert his speedy trial rights in the correct case. As set forth above, no formal motion for a speedy trial was filed in the case that was tried (it was filed in the case that was dismissed) and Petitioner only made an oral motion for a speedy trial. As to this oral motion, the state court found that "because this was the only mention of his right to a speedy trial in the new case, it would have been difficult for Lott to prove a violation" (Doc. 14-18, p. 13).

---

[4] See United States v. Jeanetta, 533 F.3d 651, 656 (8th Cir. 2008) (stating that a delay approaching one-year may meet the threshold requirement of Barker).

Finally, the state court found there was no actual prejudice. Before the state appellate court, Petitioner asserted that he was prejudiced by spending "dead time" in jail, it allowed the state to re-indict him to a higher degree of murder, and witnesses, including Mitchell and Leroy Lott passed away prior to trial (Doc. 14-15, p. 47). The state appellate court rejected the first two arguments because there was no showing of actual prejudice and rejected the third argument because he failed to raise the claim in an amended petition before the trial court (Doc. 14-18, p. 14).[5] Petitioner does not explain how the state courts erred in their assessment. In addressing prejudice, there are three considerations: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. 514, 532 (1972). Petitioner does not elaborate on the first two factors nor has he pointed to any evidence that show oppressive pretrial conditions or any significant anxiety or concern. As to the witnesses who died prior to trial, Petitioner has made no argument that this Court should consider an argument that was waived before the state courts. It is also unclear how their vaguely corroborative testimony would have overcome the other overwhelming evidence of guilt. See, e.g., Summage, 575 F.3d 876 (stating that listing witnesses who can offer some evidence to corroborate defenses theory is insufficient). In sum, Petitioner has made no suggestion that the state courts erred in "engag[ing] in the difficult and sensitive balancing process" in addressing Petitioner's speedy trial claim nor has he shown prejudice as a result of counsel's failure to raise a speedy trial claim on direct appeal. Barker, 407 U.S. at 533; Taylor v. Roper, 561 F.3d 859, 863 (8th Cir. 2009) (noting that because the Barker standard is "general," the state courts have latitude to determine whether the defendant has met his burden).

---

[5] Petitioner's amended petition before the state trial court makes no mention of deceased witnesses (Doc. 14-13, p. 177). While not argued by Respondent, a petitioner must "fairly present" his claims before the state courts to preserve review by the federal courts. Baldwin v. Reese, 541 U.S. 27 (2004).

\* \* \* \* \*

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Petition of Steve Lott for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 11) is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 335-338 (2003) (setting forth the standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of July, 2024.